UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:09-CV-13-M

SARAH E. CONDIFF — PLAINTIFF

v.

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

HART COUNTY BOARD OF EDUCATION,
HART COUNTY SCHOOL DISTRICT
AND RICKY LINE, Individually and in his
official capacity as Superintendent of the
Hart County Board of Education — DEFENDANTS

## INTRODUCTION

The plaintiff, Sarah E. Condiff ("Condiff"), has asserted various claims under Federal statutes and the United States Constitution as the result of not being rehired as a teacher for the Hart County Board of Education (the "Board') after her limited, one-year contract of employment as a teacher for the 2007-2008 school year expired. Condiff claims she was not rehired because her husband, Chris, reported to school officials that his daughter, K[redacted], Condiff's step-daughter, had allegedly been subjected to sexual harassment by a teacher, Cary Barrett. This memorandum will demonstrate that:

- The claims against the Hart County School District must be dismissed because there is no such legal entity capable of being sued.
- The claims against the Board must be dismissed because there is no allegation or proof that the refusal to rehire Condiff after the 2007-2008 school year was the result of a discriminatory policy of the Board.
- The claims against Superintendent Ricky Line ("Line") must be dismissed because all teachers teaching under a limited contract were terminated at the end of each year and he

had no role in deciding whether Condiff would be rehired.

- Condiff has no cause of action under Title IX because she did not engage in any protected activity – it was her husband, Chris Condiff, who solely communicated with school officials regarding alleged sexual harassment of his daughter.
- Condiff has no claim under the First Amendment to the United States Constitution (the "First Amendment") because she had an official duty to report sexual harassment.
- Condiff, as a "class of one," has no claim under the Equal Protection clause of the 14th Amendment to the United States Constitution.

After a discussion of the relevant factual background, the defendants will present their arguments.

**FACTUAL BACKGROUND**

During the 2007-2008 school year Condiff was employed by the Board teaching 6th and 8th grade language arts. (Depo., Condiff, pp. 29-30). Condiff understood that her contract with the Board was a limited contract for the 2007-2008 school year only. (Depo., Condiff, p. 30). Condiff only had a Temporary Provisional Certificate to teach Middle Grades English ("language arts") and the temporary certification expired on June 30, 2008. (Depo., Condiff, pp. 121-122 exhibit 6).

On January 28, 2008 Condiff's stepdaughter, K[redacted] Condiff ("K[redacted]"), a senior at the Hart County High School, told Condiff that one of her teachers, Cary Barrett ("Barrett"), had made inappropriate statements of a sexual nature to her. (Depo., Condiff, pp. 93-94, 102). Condiff called her husband, Chris Condiff ("Chris"), who was working out of town, and told him about the incident. (Depo., Condiff, p. 99). Condiff then opened up her personal e-mail account at home and had K[redacted] compose a document describing the conversation she claimed to have

with Barrett. (Depo., Condiff, p. 100). Condiff sent the e-mail K[redacted] had prepared to her husband. (Depo., Condiff, p. 100). The body of the e-mail was prepared entirely by K[redacted]. (Depo., Condiff, p. 100). Condiff never had any contact with anyone employed by the Board concerning Barrett's alleged inappropriate statements to K[redacted]. (Depo., Condiff, pp. 103, 104, 105-06).

The following morning Chris contacted Chris Mueller ("Mueller"), the principal of the Hart County High School, by telephone. Chris related to Mueller the contents of the e-mail K[redacted] had prepared and forwarded the e-mail to Mueller. (Depo., Chris Condiff, p. 25). Chris requested a meeting with Mueller on the following Monday when he would be back in Hart County, to which Mueller agreed. (Depo., Chris Condiff, p. 27). Chris told Mueller he wanted to handle the situation in a "low key" manner. (Depo., Chris Condiff, p. 27).

Mueller called Chris later that afternoon (January 29, 2008) and stated he had confronted Barrett with the allegations, that Barrett had admitted that an inappropriate conversation had taken place, and that Barrett had apologized for the incident. (Depo., Chris Condiff, pp. 27-28).[1] Upon inquiry from Chris as to what Mueller intended to do about the situation, Mueller stated he would transfer K[redacted] to a different class so that she would not have contact with Barrett. (Depo., Chris Condiff, pp. 27-28).

On February 4, 2008, a meeting was held. Present were Chris, Mueller, Barrett, and a guidance counselor, Wilcoxson. (Depo., Chris Condiff, p. 30). Condiff agreed at that time that

[1] It should be noted that subsequent testimony has indicated that Barrett actually denied any inappropriate conversation with Kalene. For purposes of this motion only, however, Chris Condiff's account is provided.

no further action would be taken concerning the matter – it was sufficient that K[redacted] had been transferred to another class and that Barrett would no longer greet students at the door of the school as part of his morning supervision duty so that K[redacted] would have no further contact with him. (Depo., Chris Condiff, pp. 35-36).

Later Chris heard that a similar situation had allegedly occurred involving Barrett and another female student. (Depo., Chris Condiff, p. 36). Chris called Line, who stated he had no knowledge of the previous incident. (Depo., Chris Condiff, pp. 37-38). Chris claims to have sent Line a copy of the e-mail K[redacted] had prepared. (Depo., Chris Condiff, p. 38). Line called Chris within 24 to 48 hours, having investigated what Mueller had done in response to K[redacted]'s report, and stated to Chris that Mueller had handled the matter appropriately. (Depo., Chris Condiff, pp. 38-39). This conversation occurred near the end of February 2008. (Depo., Chris Condiff, p. 42). Line provided Chris with forms necessary to file a formal complaint against Barrett if he wished to do so. (Depo., Chris Condiff, p. 39). Chris discussed the matter with Condiff and they decided to take no further action against Barrett. (Depo., Chris Condiff, p. 42).

Chris confirmed that Condiff had no contact with anyone employed by the Board concerning K[redacted]s allegations. (Depo., Chris Condiff, p. 45).

Condiff received a notice dated April 24, 2008, that her contract would not be renewed for the 2008-2009 school year. Such a letter of non-renewal was routinely sent to all teachers in the school system who were not tenured in order to comply with the provisions of KRS 161.750(2), as it existed when the letter was sent, which provided:

> (2) If the superintendent does not renew the contract he shall present written notice to the teacher that the contract will not be renewed no later than May 15 of the school year during which the contract is in effect. Upon receipt of a request by the teacher, the superintendent shall provide a written statement containing the specific, detailed, and complete statement of grounds upon which the nonrenewal of contract is based.

Such letters were routinely sent to all teachers working under a limited contract so as to allow those responsible for hiring teachers for the coming year the flexibility to either rehire teachers from the previous year or hire different teachers. *See* Declaration of Ricky Line ¶ 4, attached as Exhibit 1. This practice has been in effect since April 1998. Declaration of Ricky Line ¶ 4. Under the law in effect at the end of the 2007-2008 school year, unless such a letter was sent the Board was required to employ a teacher employed under a limited contract on a full time basis for the following year. Declaration of Ricky Line ¶ 5. Condiff was not eligible to be rehired for any language arts position for the 2008-2009 school year because her temporary provisional certification to teach language arts expired on June 30, 2008. Declaration of Ricky Line ¶ 6.

The Board was never notified of the situation involving K[redacted] Condiff and Cary Barrett because K[redacted]s father expressed a desire not to pursue the matter further. Declaration of Ricky Line ¶ 7. Line provided Chris with the documents necessary to bring the matter before the Board by filing a complaint, but no complaint was ever filed. Declaration of Ricky Line ¶ 7.

Subsequent to the 2007-2008 school year Condiff has applied for various jobs at elementary schools within and outside the Hart County School District and at the Hart County High School. She has not been offered employment at any of those schools. At the time of her deposition Condiff was teaching at the Elizabethtown Community Technical College. (Depo., Condiff, pp. 145-146).

## ARGUMENT

### I.
### THE HART COUNTY SCHOOL DISTRICT IS NOT A LEGAL ENTITY AND MUST BE DISMISSED AS A PARTY.

The "Hart County School District," named as a defendant in the Complaint, is not a legal entity and should be dismissed. While KRS 160.010 states that each county constitutes a school

district, KRS 160.160 provides that each school district is under the management and control of a Board of Education. It is the Board of Education that is a body politic and corporate that can sue and be sued. KRS 160.160(1) provides:

> (1) Each school district shall be under the management and control of a board of education consisting of five (5) members, except in counties containing a city of the first class wherein a merger pursuant to KRS 160.041 shall have been accomplished which shall have seven (7) members elected from the divisions and in the manner prescribed by KRS 160.210(5), to be known as the "Board of Education of...., Kentucky." Each board of education shall be a body politic and corporate with perpetual succession. It may sue and be sued; make contracts; expend funds necessary for liability insurance premiums and for the defense of any civil action brought against an individual board member in his official or individual capacity, or both, on account of an act made in the scope and course of his performance of legal duties as a board member; purchase, receive, hold, and sell property; issue its bonds to build and construct improvements; and do all things necessary to accomplish the purposes for which it is created. Each board of education shall elect a chairman and vice chairman from its membership in a manner and for a term prescribed by the board not to exceed two (2) years (emphasis added).

## II.

## THERE IS NO ALLEGATION OR PROOF THAT THE NONRENEWAL OF CONDIFF'S EMPLOYMENT FOR THE 2008-2009 SCHOOL YEAR WAS THE RESULT OF ANY DISCRIMINATORY POLICY OR PROCEDURE ADOPTED BY THE BOARD.

Counts I and II of the Complaint allege violations of Title IX, 20 U.S.C. § 1681 *et seq.* ("Title IX"). Counts III and IV allege violations of 42 U.S.C. § 1983 ("§ 1983") by depriving Condiff of her right to free speech under the First Amendment (Count III) and by depriving her of her right to equal protection of the law as provided in the 14th Amendment to the United States Constitution (Count IV).

It is clear that there is no *respondeat superior* liability under either of the two civil rights laws cited in the Complaint. Klemencic v. Ohio State University, 263 F.3d 504 (6th Cir. 2001). In other words, the Board cannot be held liable for the acts of one of its employees under either

statute. The Board of Education can *only* be held liable if the adverse action against the plaintiff was the result of *a discriminatory policy or custom adopted by the Board.* In the words of Judge Siler, formerly of this Court:

> It is possible for an educational institution to be a defendant in both § 1983 and Title IX actions, *see Soper v. Hoben,* 195 F.3d 845, 853-55 (6th Cir.1999), and, <u>when sued under either § 1983 or Title IX, an institution cannot be liable for the acts of its employees under a theory of *respondeat superior*</u>. Instead, where sexual harassment of a student by a school employee is at issue <u>in either a § 1983 or Title IX action, a school is liable only for its own actions</u> (underlined emphasis added.).

263 F.3d at 510-11.

Condiff makes no allegations that the Board has adopted any discriminatory policy, procedure or custom that resulted in adverse action against her. Neither is there a suggestion in any of the pleadings, discovery and disclosure materials on file, or affidavits to suggest that the Board had a policy or procedure that allowed Condiff's limited contract to be non-renewed or that allowed her to be excluded from future employment because of her sex or visual impairment (Title IX). There is no suggestion in any of the pleadings, discovery and disclosure materials on file, or affidavits to suggest that the Board had a policy, procedure or custom that allowed Condiff's limited contract to be non-renewed or that allowed her to be excluded from future employment because of her speech or any right protected by the 14th Amendment (§ 1983).

The record does disclose a practice, described in the Declaration of Line, that all non-tenured teachers were notified at the end of each school year that their employment would not be renewed. This practice is non-discriminatory and had nothing to do with Condiff's sex or visual impairment, so it does not offend Title IX; it has nothing to do with Condiff's speech, so it does not offend § 1983.

## III.

## THE CLAIMS AGAINST LINE MUST BE DISMISSED BECAUSE THE NON-RENEWAL OF CONDIFF'S LIMITED ONE-YEAR CONTRACT APPLIED TO ALL NON-TENURED EMPLOYEES AND HE HAD NO ROLE IN THE DECISION NOT TO REHIRE CONDIFF.

Condiff faults Line's behavior in two respects: first, she alleges that the non-renewal of her teaching contract was wrongful; second, she alleges Line discriminated against her because she was not rehired subsequent to the non-renewal of her teaching contract. Neither of these allegations has any merit.

### A. Line's Non-Renewal of Condiff's Limited One-Year Contract Was Not Wrongful.

According to Line's Declaration, every year all teachers holding a limited one-year employment contract were non-renewed at the end of each school year. Line Declaration, ¶ 4. The purpose of this procedure was to allow the principals and School Based Decision Making Councils, who are responsible for hiring teachers, the flexibility to retain or replace teachers holding such a one-year contract. Line Declaration ¶ 4. It was applied to all teachers holding a one-year limited contract because the law at the time the termination letter was sent to Condiff provided that if such a letter were not sent by a specified date the Board was obligated to rehire the teacher for the following school year. Line Declaration, ¶ 5.

Furthermore, Condiff was not eligible to be rehired in to any language arts position during the 2008-2009, because as Condiff admits, her temporary provisional certification to teach language arts expired on June 30, 2008. Line Declaration ¶ 6 and Condiff depo pp. 121 - 122.

Thus, there was no wrongful action in Line's notification to Condiff in April 2008 that she would not be rehired for the coming school year because there is no causal connection

between Line's action and the allegations K[redacted] made against Barrett. Condiff would have received the same letter as a matter of course even if K[redacted] had not made the allegations against Barrett or if those allegations had not been reported.

**B. Line Cannot Be Held Liable Due to the Failure to Rehire Condiff Because He Had No Authority to Rehire Condiff.**

Under Kentucky law, it is the principal of each school and the School Based Decision Making Council who hire teachers, not the Superintendent. The Superintendent's only role in filling teacher vacancies is to submit a list of qualified applicants' names to each school in which the applicant has applied for employment. KRS 160.345(2)(h)(1) provides:

(h) Personnel decisions at the school level shall be as follows:

> 1. <u>From a list of applicants submitted by the local superintendent, the principal at the participating school shall select personnel to fill vacancies, after consultation with the school council</u>, consistent with subsection (2)(i)(10) of this section. The superintendent may forward to the school council the names of qualified applicants who have pending certification from the Education Professional Standards Board based on recent completion of preparation requirements, out-of-state preparation, or alternative routes to certification pursuant to KRS 161.028 and 161.048. Requests for transfer shall conform to any employer-employee bargained contract which is in effect (emphasis added).

Obviously, Superintendent Line cannot be held liable for decisions he had no authority to make because there is no causal nexus between his conduct and the fact that Condiff was not hired for one of the positions for which she applied after her limited one-year contract expired.

## IV.

## The Plaintiff has No Cause of Action for Discrimination Against Her Under Title IX.

While Condiff is correct that there is a private cause of action under Title IX, she is incorrect that such an action exists under the particular circumstances of the instant case.

As set forth in the Factual Background above, Condiff never contacted school officials concerning the allegations K[redacted] made against Barrett – it was Chris Condiff, and Chris Condiff only, who contacted school officials concerning K[redacted]'s allegations against Barrett.

In order for a person to be protected by Title IX, that person must have engaged in protected activity. In the case cited in Condiff's complaint, for example, Jackson v. Birmingham Board of Education, 544 U.S. 167 (2005) the Court held that a basketball coach who complained about the lack of funding for the girls' basketball team he coached was entitled to the protection of Title IX. In the instant case, by contrast, the person who complained about the situation involving Kalene and another female student was not Condiff, but her husband.

Since Condiff did not engage in any protected activity (communicating with school officials about K[redacted]) before her limited one-year contract expired, she has no cause of action. A case on point is Dawn L. v. Greater Johnstown School District, 586 F.Supp.2d 332 (W.D.Pa. 2008). In this case a student was subjected to sexual harassment by another student. The parents complained and were not satisfied with the response. Both parents volunteered extensively at the school and the father was paid to keep score at basketball games. Soon after the mother was interviewed on television about the school's lack of an appropriate response, the father was removed from keeping scores at basketball games and the mother was required to obtain new clearances in order to continue her volunteer activities. The father's scorekeeping duties were discontinued immediately after the television interview which involved only the mother.

The Court held that while the mother had a cause of action, the father did not because the father did not participate in the "protected activity," i.e., the television interview. According to the Court, "Claims for retaliation are, however, only available to those who have actually engaged in a

protected activity themselves; Title IX does not extend this protection to the actor's friends and family." 586 F.Supp.2d at 376.

Similarly, in the instant case, it was Chris Condiff, not the plaintiff Sarah Condiff, who engaged in activity that might be protected under Title IX. Sara Condiff did not communicate with school administrators in any way regarding K[redacted] and, therefore, did not engage in any activity protected by Title IX. Having engaged in no protected activity, Condiff has no cause of action under Title IX.

V.

**CONDIFF HAS NO CLAIM UNDER THE FIRST AMENDMENT.**

Attached to Line's Declaration as Exhibits A and B are the sexual harassment policies applicable to Condiff in her employment as a teacher for the Hart County Board of Education. Both policies require that all sexual harassment be reported to appropriate authorities. Thus, although she chose not to do so, Condiff was required to report K[redacted]s allegations.

The United States Supreme Court has held that a public employee who has an official duty to speak is doing so as an official of the government, not as a citizen, and has no right of action under the First Amendment to the United States Constitution (the "First Amendment") for the consequences of so speaking. In Garcetti v. Ceballos, 547 U.S. 410 (2006) an assistant United States District Attorney, Ceballos, alleged that he was subjected to adverse employment actions because he prepared a disposition memorandum recommending that a criminal case be dismissed due to government misconduct. The Court found that it was Ceballos's duty to prepare such a memorandum and, thus, he had no cause of action under the First Amendment. In the words of the Court:

> We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.

547 U.S. at 421.

Thus, even if Condiff had engaged in protected activity by reporting the alleged sexual harassment of her step-daughter and another girl by Barrett, which she did not, she would have no cause of action under the First Amendment because she would have been speaking pursuant to her official duties.

## VI.

## CONDIFF HAS NO EQUAL PROTECTION CLAIM.

Condiff's equal protection claim is what has been described as a "class-of-one" claim of denial of equal protection. The essence of such a claim is that the plaintiff was intentionally and maliciously treated differently than others similarly situated and the absence of any allegation that the reason for such treatment was the plaintiff's membership in a protected class.

The United States Supreme Court squarely rejected such a cause of action insofar as public employees are concerned in Engquist v. Oregon Department of Agriculture, 128 S.Ct. 2146 (2008). In the words of the Court:

> The question in this case is whether a public employee can state a claim under the Equal Protection Clause by alleging that she was arbitrarily treated differently from other similarly situated employees, with no assertion that the different treatment was based on the employee's membership in any particular class. We hold that such a "class-of-one" theory of equal protection has no place in the public employment context.

128 S.Ct. at 2148-49.

## CONCLUSION

Condiff has sued a non-existent entity by suing the "Hart County School District." The "Hart County School District" should be dismissed.

The Hart County Board of Education cannot be held liable for the actions of its employees in the absence of a showing that those actions were the result of a discriminatory policy, procedure or custom of the Board. Condiff has not alleged any such policy, procedure or custom and the record currently before the Court discloses none.

Ricky Line, the Board's Superintendent, is not liable for any of Condiff's claims. Condiff's claims are based on two facts: (1) her limited one-year contract was not renewed for the 2008-2009 school year and (2) she was not hired for subsequent positions for which she applied.

As to the non-renewal of her contract, Condiff was notified that her employment would not be renewed for the 2008-2009 school year *along with every other teacher holding a limited one-year contract* pursuant to a practice that was designed to provide flexibility to those responsible for hiring teachers holding such a contract. Condiff was also not eligible to be rehired for any language arts position because her temporary provisional certification expired June 30, 2008, before the 2008-2009 school year. Condiff would have received the same letter even if Barrett had not allegedly engaged in an inappropriate conversation with her step-daughter; thus, as a matter of law there is no causal nexus between the non-renewal of her contract and the alleged deprivation of her rights under Title IX and the First Amendment.

As to the fact that she was not subsequently hired, Line is not responsible for the failure to rehire Condiff because he did not have the authority to make the decision to hire Condiff or not – Kentucky law allocates that responsibility to the principal and School Based Decision Making Council at each school.

Condiff has no cause of action under Title IX because she did not engage in any protected activity. It was Condiff's husband, Chris, who had the only contact with school administrators in connection with K[redacted] allegations.

Condiff has not formulated a cause of action under the First Amendment because, as a public employee, she had a duty to report sexual harassment. The United States Supreme Court has held that a report or complaint by a public employee whose duty it is to do so does not give rise to a cause of action under the First Amendment.

Condiff has no equal protection claim because the United States Supreme Court has rejected such claims by a public employee who constitutes a "class of one."

For these reasons, the defendants are entitled to dismissal of Condiff's claims with prejudice at the cost of the plaintiff.

Respectfully submitted.

ENGLISH, LUCAS, PRIEST & OWSLEY, LLP
1101 College Street, P. O. Box 770
Bowling Green, Kentucky 42102-0770
Telephone: (270) 781-6500
Fax: (270) 782-7782
mowsley@elpolaw.com
cpriest@elpolaw.com

Attorneys for Defendants

/s/ W. Cravens Priest III
MICHAEL A. OWSLEY
W. CRAVENS PRIEST III

**CERTIFICATE OF SERVICE**

I hereby certify that on July 13, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF System, which will send a notice of electronic filing to the following:

Charles W. Miller
Waterfront Plaza, Suite 2104
325 West Main Street
Louisville, KY 40202
cmiller@bellsouth.net

/s/ W. Cravens Priest III
W. CRAVENS PRIEST III