# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## BOWLING GREEN DIVISION

**CIVIL ACTION NO. 1:09CV-00013-JHM**

**SARAH E. CONDIFF**                                                                  **PLAINTIFF**

**v.**

**HART COUNTY SCHOOL DISTRICT,**
**HART COUNTY BOARD OF EDUCATION, and**
**RICKY LINE, Individually and in his official**
**capacity as Superintendent of the Hart County**
**Board of Education**                                                              **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendants, Hart County School District, Hart County Board of Education, and Ricky Line, individually and in his official capacity as Superintendent of the Hart County Board of Education, for summary judgment on Plaintiff's claims for violation of Title IX and the First and Fourteenth Amendments of the United States Constitution pursuant to 42 U.S.C. § 1983 [DN 21]. Fully briefed, these matters are ripe for decision.

## I. FACTS

Plaintiff, Sarah E. Condiff ("Condiff"), was employed as a sixth and eighth grade language arts teacher by Defendant, Hart County Board of Education (the "Board"), at Bonnieville Elementary School for the 2007-2008 school year. Condiff also served as the cheerleading coach during that time period. Condiff was hired under a limited, one-year employment contract. Condiff had a temporary provisional certificate to teach middle grades English for the 2007-2008 school year. On January 28, 2008, while Condiff was still employed at the Bonnieville Elementary School, her stepdaughter, a senior at Hart County High School, informed her that one of her teachers, Mr. Cary Barrett, had made inappropriate statements of a sexual nature to her. Condiff

contacted her husband, Chris Condiff ("Chris"), who was working out of town and told him about the incident. Condiff then opened up her personal e-mail account at home and instructed her stepdaughter to compose a document describing the conversation she had with the teacher. Condiff sent the e-mail her stepdaughter prepared to her husband. After Chris reviewed the e-mail, he called his daughter to discuss the matter and then called Condiff.

After discussing it with Condiff, Chris contacted Chris Mueller, the principal of Hart County High School, by telephone on January 29, 2008, to report the sexual harassment. Chris related to Mueller the contents of the e-mail prepared by his daughter and then forwarded the e-mail from Condiff's personal e-mail account to Mueller. Chris testified that during the conversation he informed Mueller that Sarah Condiff was a teacher in the Hart County School District. Chris requested a meeting be scheduled with Mueller for the day he returned to town. Principal Mueller contacted Chris the afternoon of January 29, 2008, and informed him that he had talked to Mr. Barrett who admitted that an inappropriate conversation occurred and apologized for the incident.[1] On February 4, 2008, a meeting was held at the high school with Chris Condiff, Principal Mueller, Mr. Barrett, and Christie Wilcoxen, a guidance counselor. It was agreed that Condiff's stepdaughter would be immediately removed from Mr. Barrett's class and Mr. Barrett would no longer greet students at the door of the school as part of his morning supervision duty so that Condiff's stepdaughter would have no further contact with him.

After this meeting, Chris learned that Mr. Barrett had allegedly made sexually inappropriate remarks to another student at Hart County High School and that Mr. Barrett had not been disciplined

---

[1]Subsequent testimony in the record indicates that Mr. Barrett denied any inappropriate conversation with Condiff's stepdaughter. For purposes of this motion, the Court accepts Chris Condiff's account.

for that conduct. Chris spoke to Condiff who advised him to contact Superintendent Ricky Line. Chris contacted Line and forwarded a copy of the e-mail his daughter had prepared on Condiff's personal e-mail account. Chris testified that he informed Superintendent Line that Condiff was currently employed by the Hart County School District as a teacher at Bonnieville Elementary School and that he did not want his wife to be retaliated against for these reports of sexually inappropriate conduct by Mr. Barrett. Superintendent Line testified that he met with Chris on February 20, 2008. Chris testified that Superintendent Line informed him that he believed that Principal Mueller had handled the matter appropriately. Superintendent Line provided Chris with the forms necessary to file a formal complaint against Mr. Barrett if he wished to do so. The Condiffs took no further action against Mr. Barrett.

On April 24, 2008, Condiff received a formal notice that her contract would not be renewed for the 2008-2009 school year. The letter provided in relevant part:

> State law requires all non-tenured certified staff to receive notification of employment status annually (KRS 161.750 2). This letter certifies that your employment contract with Hart County Schools will not be renewed for the 2008-2009 school year.
>
> As changes in staff occur during the summer and funding sources become more definite, employment opportunities may become available.

(Ricky Line Letter, April 24, 2008.) Superintendent Line testified that letters of non-renewal were routinely sent to all teachers working under a limited contract so as to allow those responsible for hiring teachers for the coming year the flexibility to either rehire teachers from the previous year or hire different teachers. (Declaration of Ricky Line ¶ 4.) Unless such a letter was sent, the Board was required to employ a teacher working under a limited contract on a full time basis for the following year. (Id. at ¶ 5; see also KRS 161.750(2)). Condiff testified that when she received the

letter, the principal of Bonnieville Elementary School informed Condiff that her current language arts teaching position was being eliminated due to a reduction in force at the school. Despite the representation by the principal of Bonnieville Elementary regarding the reduction of staff, two language arts positions at Bonnieville Elementary School were posted and filled. According to Condiff, she applied for the position, but was not placed on the list of qualified candidates by Superintendent Line. Subsequent to the 2007-2008 school year, Condiff has applied for various jobs at elementary schools within and outside the Hart County School District and at the Hart County High School.[2] She has not been offered employment at any of those schools. At the time of her deposition, Condiff was teaching at the Elizabethtown Community Technical College.

As a result of the non-renewal of her contract and of the failure of the Hart School Board of Education to extend an offer of employment for other positions in the school system, Plaintiff filed this action asserting claims of retaliation and third-party retaliation under Title IX, violation of her First Amendment rights brought pursuant to 42 U.S.C. § 1983, and violation of the Equal Protection Clause brought pursuant to 42 U.S.C. § 1983. Specifically, Plaintiff argues that she was not rehired by the Hart County Board of Education because she and her husband reported to school officials that her stepdaughter had been subject to sexual harassment by a teacher at the high school.

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no

---

[2] Condiff applied for the following positions in the Hart County School District: July 24, 2008, Special Education position at Bonnieville Elementary School; June 2008, Special Education position at Hart County High School; June 2008, Special Education position at Munfordville Elementary School; July 2008, Special Education position at LeGrande Elementary School; December 2008, Special Education position at Hart County High School; May 2009, Migrant Summer School position; June 2009, Special Education position at Hart County High School; July 2009, Special Education position at Memorial Elementary School.

genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The rule requires the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by " showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

### III. DISCUSSION

Defendants move for summary judgment arguing that (1) the Hart County School District must be dismissed because there is no such legal entity;(2) Condiff's Title IX claims fail because she did not engage in any protected activity; (3) Condiff's First Amendment claim fails because she had an official duty to report sexual harassment; (4) Condiff's Equal Protection claim fails because she is a "class of one;" and (5) Condiff's § 1983 claims against the Hart County Board of Education fail because Condiff has not established a policy, custom, or practice of retaliation.

## A.  Hart County School District

There is no legal entity known as "Hart County School District."  Instead, the proper legal entity responsible for the operation of Hart County School District is the Hart County Board of Education. Vance v. Spencer County Public School Dist., 231 F.3d 253, 255 n. 2 (6th Cir. 2000); Sims v. Bracken County School Dist., 2010 WL 4103167, *1 n. 2 (E.D. Ky. Oct. 18, 2010); KRS 160.160(1).  The Plaintiff has filed suit against the Hart County Board of Education who is the real party in interest.  For these reasons, the motion to dismiss the "Hart County School District" is granted.

## B.  Title IX Retaliation Claim against Superintendent Line

The Title IX claim against Superintendent Line in his individual capacity is dismissed because there is no individual liability for a Title IX claim.  Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ., 526 U.S. 629, 641 (1999)("The Government's enforcement power may only be exercised against the funding recipient . . . and we have not extended damages liability under Title IX to parties outside the scope of this power."); Soper v. Hoben, 195 F.3d 845 (6th Cir. 1999).  A Title IX claim may be brought only against the funding recipient.  Id.

## C. Title IX Retaliation Against the Board of Education

### 1. Prima Facie Case

Defendant argues that Plaintiff's retaliation claim under Title IX fails for lack of a prima facie case.  Claims for retaliation under Title IX are analyzed under the standards developed under federal law for Title VII cases.  Nelson v. Christian Bros. University, 226 Fed. Appx. 448, 454 (6th Cir. 2007).  To make out a claim of retaliation, a plaintiff must show that: (1) she engaged in a protected activity; (2) this exercise of protected rights was known to the defendant; (3) the defendant

thereafter took adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. Scott v. Metropolitan Health Corp., 234 Fed. Appx. 341, 346 (6th Cir. 2007); Morris v. Oldham County Fiscal Court, 201 F.3d 784, 792 (6th Cir. 2000).[3] If and when a plaintiff has established a prima facie case, the burden of production once again shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If the employer carries that burden, the plaintiff bears the burden of demonstrating that the employer's reason is pretextual. Blair v. Henry Filters, Inc., 505 F.3d 517, 524 (6th Cir. 2007). Defendant maintains that Condiff cannot establish the elements necessary to state a prima facie case of retaliation.

### a. Protected Activity

Defendant first argues that Plaintiff did not engage in any protected activity before her limited one-year contract expired. Defendant contends that Chris Condiff, not the Plaintiff, engaged in the protected activity. According to Defendant, since Sarah Condiff did not communicate with

---

[3]Defendant maintains that the Board can only be held liable under a Title IX retaliation claim if the adverse action against Condiff was the result of a discriminatory policy or custom adopted by the Board. Defendants application of the Monell "policy or custom" standard to Title IX claims is incorrect and not supported by the case law. Monell identifies when a municipality may be held liable under § 1983, not Title IX. Monell v. Dept of Social Services, 436 U.S. 658 (1978). See Fitzgerald v. Barnstable School Committee, 555 U.S. 246, 797 (2009)(distinguishing standard for sexual harassment cases brought pursuant to Title IX and § 1983); Klemenic v. Ohio State University, 263 F.3d 504 (6th Cir. 2001)(recognizing different standard for sexual harassment cases brought pursuant to Title IX and § 1983). The Sixth Circuit has clearly articulated the standard required to state a claim against the Board of Education for a Title IX retaliation claim. Nelson v. Christian Bros. University, 226 Fed. Appx. 448, 454 (6th Cir. 2007); see also Marcum ex rel. C.V. v. Board of Educ. of Bloom-Carroll Local School District, 727 F. Supp. 2d 657 (S.D. Ohio 2010)(district court granted summary judgment in favor of the School Board on the § 1983 finding no policy or custom of tolerating sexual harassment or retaliation, but denied summary judgment on the Title IX claim of retaliation).

school administrators in any way regarding her stepdaughter, she did not engage in any protected activity and has no cause of action under Title IX. See Dawn L. v. Greater Johnstown School District, 586 F. Supp. 2d 332 (W.D. Pa. 2008). The Court disagrees.

The actions of Sarah Condiff reflect that she has opposed a practice made unlawful by Title IX. The Sixth Circuit has identified conduct that is considered "opposing" conduct to include "[c]omplaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices; refusing to obey an order because the worker thinks it is unlawful under Title VII; and opposing unlawful acts by persons other than the employer- e.g., former employers, union, and co-workers." Niswander v. Cincinnati Ins. Co., 529 F.3d 714, 719-20 (6th Cir. 2008); Johnson v. University of Cincinnati, 215 F.3d 561, 579 (6th Cir. 2000). The only requirement is that the opposition must be "based on a 'reasonable and good faith belief that the opposed practices were unlawful'." Id. at 579; (citation omitted); Keys v. U.S. Welding, Fabricating & Mfg., Inc., 1992 WL 218302, *5 (N.D. Ohio Aug. 26, 1992)("Under § 704(a) of Title VII, [the plaintiff] needed only a 'good faith belief' that the company practice about which he was complaining violated Title VII; it is irrelevant whether the allegations are ultimately determined to violate Title VII."); Martin v. Challenge Mfg. Co., 2010 WL 1032660, *5 (W.D. Mich. March 17, 2010). In other words, "there is no qualification . . . on the party to whom the complaint is made known-i.e., the complaint may be made by anyone and it may be made to a co-worker, newspaper reporter, or anyone else about alleged discrimination against oneself or others . . . ." Johnson, 215 F.3d at 581

For purposes of this motion for summary judgment, it is undisputed that when confronted with allegations of sexual harassment of her stepdaughter, Plaintiff instructed her stepdaughter to document the incidents of sexual harassment on Plaintiff's personal e-mail account, informed her

husband of the alleged harassment, forwarded the e-mail to her husband, discussed the incident with her husband, instructed her husband to contact school officials regarding the harassment, and authorized him to forward the e-mail to school officials describing the sexual harassment by Mr. Barrett with Plaintiff's personal e-mail address on it. Furthermore, Chris Condiff informed both Principal Mueller and Superintendent Line of the "conversation that [he] had with Sarah," that his wife was a teacher in the Hart County School District, and that he did not want his wife to be retaliated against for the reports of sexual harassment of their daughter and another student. (Chris Condiff Dep. 24-26.) Chris also testified that at the end of the conversation with Superintendent Line he was informed that there were procedures that he or Ms. Condiff could follow to take charges further against Mr. Barrett. (Id. at 41.) While her husband actually contacted the school officials, it is clear that Plaintiff was involved in the opposition of the sexual harassment including the decision to contact school officials and the decision to draft the allegations in her personal e-mail account.[4] Accordingly, the Court finds that Plaintiff has demonstrated that she engaged in protected activity by opposing the sexual harassment of her stepdaughter.

Given the facts set forth above, it is also clear that Defendant was aware of the protected activity of Condiff. Both Principal Mueller and Superintendent Line spoke with Chris in January

---

[4]Plaintiff also argues that even if the Court did not believe that she engaged in protected activity, a third-party retaliation claim exists against Defendant. Defendant maintains that Title IX does not create a claim for third-party retaliation in circumstances where a plaintiff has not engaged personally in any protected activity. Given the recent decision of the United States Supreme Court in Thompson v. North American Stainless, LP and the fact that claims for retaliation under Title IX are analyzed under Title VII standards, it would appear that Plaintiff may be able to satisfy this element of her prima facie case due to her husband's activity. See Thompson v. North American Stainless, LP, — S.Ct. —, 2011 WL 197638 ( U.S. January 24, 2011)(recognizing third-party retaliation claims under Title VII). Because the parties have not addressed this recent decision, the Court declines to address this issue at this time.

or February of 2008 regarding the concerns he and Condiff had regarding both the sexual harassment of their daughter and the potential retaliation against Condiff for reporting the sexual harassment to the school district. Furthermore, both Principal Mueller and Superintendent Line acknowledge receipt of the e-mail generated from Condiff's personal e-mail account.

### b. Adverse Employment Action

On April 24, 2008, Plaintiff received a letter from Superintendent Line informing her that her employment contract with the Hart County School District would not be renewed for the 2008-2009 school year. At that time, the principal of Bonnieville Elementary School represented to Condiff that her current language arts teaching position was being eliminated because the school no longer needed two language arts teachers. However, in June of 2008, two language arts positions were posted as being available at Bonnieville Elementary. Plaintiff applied for the position she previously held, but according to Plaintiff, Superintendent Line did not place Condiff's name on the list of potentially qualified applicants for the language arts position. Plaintiff alleges that Superintendent Line's discriminatory action of failing to place her on the list of potentially qualified applicants for the language arts position prevented her from even being considered for the job by Principal Chapman. Finally, Plaintiff points to eight other teaching positions at various schools within the Hart County School District for which she submitted an application and either did not receive an interview or was not hired after receiving an interview. "The term 'adverse action' is drawn from employment case law; examples in that context include discharge, demotions, refusal to hire, nonrenewal of contracts, and failure to promote." Thaddeus-X v. Blatter, 175 F.3d 378, 396 (6th Cir. 1999). Here, the failure to renew Condiff's contract, failure to submit her name as a qualified candidate, and the failure to hire Condiff qualify as materially adverse employment actions.

### c. Causal Connection

To establish a causal connection, the plaintiff must "proffer evidence sufficient to raise the inference that [her] protected activity was the likely reason for the adverse action." EEOC v. Avery Dennison Corp., 104 F.3d 858, 861 (6th Cir.1997). "In determining whether there is a causal relationship between a plaintiff's protected activity and an allegedly retaliatory act, courts may consider whether the employer treated the plaintiff differently from similarly situated individuals and whether there is a temporal connection between the protected activity and the retaliatory action ." Barrett v. Whirlpool Corp., 556 F.3d 502, 516-517 (6th Cir. 2009). "While it is true that temporal proximity alone is usually insufficient to establish a causal connection for a retaliation claim," the causal connection element is satisfied "where the adverse employment action occurred within a matter of months, or less, of the protected activity." Dixon v. Gonzalez, 481 F.3d 324, 334 (6th Cir. 2007). See also Goller v. Ohio Dept. of Rehabilitation and Correction, 285 Fed. Appx. 250, 257 (6th Cir. 2008); Singfield v. Akron Metro. Hous. Auth., 389 F.3d 555, 563 (6th Cir. 2004)(three-month period between the protected activity and employee's termination is sufficient to create a causal connection for the purposes of establishing a prima facie case)). However, "where some time has elapsed between when the employer learns of the protected activity and the adverse employment action, the employee must produce other evidence, in addition to the temporal proximity, in order to establish causation." Leidner v. Napolitano, 2010 WL 5300533, *22 (E.D. Ky. 2010)(citing Mickey v. Zeidler Tool and& Die Co. 516 F.3d 516, 525 (6th Cir. 2008)).

Here, Plaintiff has raised an inference that the failure to renew her contract, failure to submit her name as a qualified candidate, and failure to hire her for the nine district positions for which she applied may have been retaliatory for the reporting of the sexual harassment. The record reflects

that Superintendent Line notified Condiff that her contract would not be renewed in April of 2008. Thus, the first adverse employment action occurred approximately two months after the Condiffs reported the sexual harassment. The proximity in time between the protected activity and the non-renewal of Condiff's contract is sufficient to establish a causal connection with respect to the non-renewal of her contract. Furthermore, the proximity of the remaining employment actions, along with the representations of school officials to Condiff in April of 2008 that only one language arts teacher would be employed for the 2008-2009 school year at Bonnieville Elementary School, the subsequent posting of two language arts teaching positions, and the Superintendent's failure to certify Condiff as a qualified candidate for the same teaching position she held in 2007-2008, also raise an inference that the failure of the Defendant to hire Plaintiff for other positions within the school district may have been in retaliation for the reporting of the alleged sexual harassment. Based on the case law discussed above, the Court holds that the causal connection element is satisfied.

After examining all the relevant factors, the Court finds that Condiff has satisfied her burden of establishing a prima facie case of retaliation.

## 2. Legitimate, Non-Discriminatory Reason

Having determined that Condiff established a prima facie case of retaliation, the Court must examine whether the Hart County School Board of Education has offered legitimate reasons for the non-renewal of Condiff's limited contract, the decision to not certify Condiff as a qualified applicant for the language arts teacher at Bonnieville Elementary, the subsequent failure to interview or hire Condiff for the language arts position, and the failure to interview and/or hire Condiff for eight other positions within the district.

According to Defendant, Condiff's employment was terminated at the end of the 2007-2008

school year along with the employment of every other full-time teacher working under a limited one-year contract in order to provide the School Based Decision Making Council and the principal of each school the flexibility to retain or replace teachers holding such a one-year contract. (Line Declaration ¶ 4.) This practice had been in effect in the Hart County School System since April of 1998. According to Defendant, under the law in effect at the end of the 2007-2008 school year, unless such a letter was sent the Board was required to employ a teacher previously working under a limited contract on a full time basis for the following year. (Id. at ¶ 5.) Furthermore, Defendant maintains that Condiff was not eligible to be rehired for any language arts position for the 2008-2009 school year because her temporary provisional certification to teach language arts expired before the 2008-2009 school year on June 30, 2008. (Id. at ¶ 6.) Finally, Defendant contends that Plaintiff was either not interviewed or not hired for other teaching positions within the district because the Principal and School Based Decision Making Council at each school selected another qualified candidate for the position. The Court finds that the Defendant has offered legitimate, non-discriminatory explanations for the employment decisions. Therefore, the burden shifts back to Plaintiff to prove that these explanations are a mere pretext for retaliation.

### 3. Pretext

Defendant argues that Plaintiff has failed to show that these reasons are pretexts "designed to mask" unlawful discrimination. Imwalle v. Reliance Medical Products, Inc., 515 F.3d 531, 544 (6th Cir. 2008). To establish pretext, a plaintiff must show that the proffered reason (1) had no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to motivate that action. Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1084 (6th Cir. 1994) (overruled on other grounds, Geiger v. Tower Automotive, 579 F.3d 614 (6th Cir. 2009)).

### i. Non-renewal of Contract

With respect to the non-renewal of Plaintiff's limited one-year contract, Plaintiff failed to set forth any evidence to suggest that the Hart County School System did not engage in the practice of terminating all full-time teachers working under a limited contract at the end of each school year. Plaintiff likewise has not offered any evidence suggesting that other teachers employed under a limited one-year contract for the 2007-2008 school year were not terminated. Accordingly, the Court finds that Condiff failed to demonstrate that Defendant's legitimate, non-discriminatory reason for not renewing her contract of employment was merely a pretext for retaliation.

### ii. Qualified Applicant Certification for 2008-2009 Language Arts Position

Condiff admits that at the time she applied for the language arts position at Bonnieville Elementary School, she did not have a certificate that would enable her to teach language arts for the 2008-2009 school year. (Sarah Condiff Dep. at 121-122.) However, in an effort to establish pretext, Condiff contends that Superintendent Line should have submitted her name for consideration for the position under the alternative certification routes provided in KRS 160.345(2)(h)(1). KRS 160.345(2)(h)(1) provides that "[t]he superintendent may forward to the school council the names of qualified applicants who have pending certification from the Education Professional Standards Board based upon . . . alternative routes to certification pursuant to KRS 161.028 and 161.048." In her deposition, Condiff testified that she would have been eligible for the certification with an offer of employment by Principal Chapman. (Id.) Specifically, Condiff testified that "[t]o be eligible for renewal [of the temporary provisional certification] I would have to have an offer of employment and that would have been the first step in being able to enroll in a continuing Option 6 program." (Id. at 83.) Thus, Condiff contends that Defendant's stated reason for not

submitting her name to Principal Chapman for the language arts position was merely a pretext for retaliation.

Condiff has failed to show that Defendant's proffered reason for not certifying her as a "qualified applicant" for the language arts position was a pretext for retaliation. The record reflects that Condiff obtained her original temporary provisional certification in language arts for the 2007-2008 school year through Option 6 of the alternative certification options. KRS 161.048(7) provides in relevant part:

> Option 6: University alternative program. With approval of the Education Professional Standards Board, a university may provide an alternative program that enrolls students in a postbaccalaureate teacher preparation program concurrently with employment as a teacher in a local school district. A student in the alternative program shall be granted a temporary provisional certificate and shall be a candidate in the Kentucky teacher internship program, notwithstanding provisions of KRS 161.030. A student may not participate in the internship program until the student has successfully completed the assessments required by the board. The temporary provisional certificate shall be valid for a maximum of one (1) year, and may be renewed two (2) additional years, and shall be contingent upon the candidate's continued enrollment in the preparation program and compliance with all requirements established by the board. . . .

KRS 161.048(7). The record does not support Plaintiff's argument that she was "qualified applicant" for the language arts position. Plaintiff has not offered any evidence to suggest that she was qualified for a temporary provisional certificate in language arts pursuant to KRS 161.048(7) for the 2008-2009 school year. Condiff does not provide any evidence regarding her "continued enrollment" in an approved "preparation program" at a qualifying university. In fact, a review of Condiff's deposition reflects that she took one online course from Morehead University in the Fall of 2007 and had not enrolled in or participated in any other class or program since completion of the online course. (Sarah Condiff Dep. at 31-45). Therefore, Condiff has not presented any evidence of her "qualified applicant" status requiring submission of her name to Principal Chapman and the

15

school council for the language arts position.  Accordingly, the Court finds that Condiff has failed to demonstrate that the Defendant's proffered reason for not submitting the Plaintiff as a "qualified applicant" to Principal Chapman and the school council and the resulting decision not to hire her for the position was a pretext for retaliation.

### iii.  Other 2008 and 2009 Hiring Decisions

The record reflects that Condiff applied for eight other positions within the Hart County School District.  Superintendent Line certified Plaintiff as a "qualified applicant" for all of these positions[5] and her name was forwarded to the Principal and School Based Decision Making Council of each school.  Seven of the positions were special education positions at various elementary schools and the high school.  One position was a Migrant Summer School position.  Condiff was interviewed for six of these positions, but was not selected.  Condiff was not interviewed for two of the positions.

Condiff fails to set forth any evidence suggesting that the reasons articulated by Defendant for its hiring decisions were pretexts for retaliation.  Plaintiff offers no evidence that the Defendant treated her differently from similarly situated individuals.  The record reflects that other qualified applicants whose names were submitted to the Principal, School Council, and Mr. Steven Caven, Coordinator of the Migrant Program, were not hired for the posted positions.  In fact, a number of qualified applicants were not interviewed as well.  In an effort to establish pretext, Plaintiff argues that the candidate hired for the special education position at Bonnieville Elementary School, Baptista Choate, was not qualified for the position.  However, Plaintiff fails to offer any evidence illustrating

---

[5]In 2007, Plaintiff obtained a Masters of Arts in Exceptional Education from Western Kentucky University.

the deficiencies with Ms. Choate's qualifications in relation to the Kentucky Education Professional Standards Board documents submitted by Plaintiff. Moreover, while the Plaintiff is correct that some of the hiring officials were aware of the report of sexual harassment, Plaintiff has cited no authority in support of her position that the knowledge of a hiring official, such as a principal, of Condiff's protected activity is sufficient alone to establish pretext. See, e.g., Knight v. Florida Dept. of Transp., 291 Fed. Appx. 955, 960 (11th Cir. 2008)(knowledge that a plaintiff engaged in protected activity is not evidence sufficient on its own to show the actual motivation for the termination was retaliatory). Essentially, the Plaintiff has failed to submit any evidence that tends to show that the decision not to interview or hire her for other positions within the school district was made for the purpose of retaliating against her for any protected activity. For these reasons, the Court finds that Plaintiff has failed to establish that the hiring decisions of the Principal, School Council, and Mr. Craven were pretexts for retaliation.

Accordingly, summary judgment in favor of Defendant on Condiff's Title IX retaliation claim is proper.

### D. § 1983 Claims

To state a claim under § 1983, a plaintiff must demonstrate that (1) the defendants deprived her of a right, privilege, or immunity secured to her by the United States Constitution or other federal law; and (2) the defendants caused the deprivation while acting under color of state law. Gregory v. Shelby County, Tenn., 220 F.3d 433, 441 (6th Cir. 2000). Section 1983 "creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." Alexander v. Haymon, 254 F.Supp. 2d 820, 830 (S.D. Ohio 2003) (quoting Gardenhire v. Schubert, 205 F.3d 303, 310 (6th Cir. 2000) (internal marks omitted)). At issue here are Condiff's substantive

rights under the First and Fourteenth Amendments to the United States Constitution.

## 1. First Amendment

Condiff's First Amendment claim is based on the idea that she was retaliated against for constitutionally-protected speech, i.e., for reporting Barrett's alleged sexual harassment of her stepdaughter. In order to state a prima facie case of retaliation under the First Amendment, a plaintiff must show that: "1)[she] engaged in constitutionally protected speech; 2) [she] was subjected to adverse action or was deprived of some benefit; and 3) the protected speech was a 'substantial' or a 'motivating factor' in the adverse action." Leary v. Daeschner, 349 F.3d 888, 897 (6th Cir. 2003). Whether a public-employee plaintiff engages in constitutionally protected speech depends on whether she is speaking as a citizen on a matter of public concern, and whether her interest in so speaking outweighs the State's interest in promoting effective and efficient public service. Pickering v. Bd. of Educ. Of Township High School Dist., 391 U.S. 563, 568 (1968); Connick v. Myers, 461 U.S. 138, 147 (1983). If the answer to both inquiries is yes, the speech is protected.

The Court has little doubt that Condiff spoke on a matter of public concern when she and her husband notified both the principal and the superintendent of the sexual harassment of students by a teacher at the high school. See Solomon v. Royal Oak Township, 842 F.2d 862, 865 (6th Cir.1988) (finding that "speech disclosing public corruption is a matter of public interest and therefore deserves constitutional protection.") (citations omitted); see also Connick, 461 U.S. at 148 (explaining that statements "seek[ing] to bring to light actual or potential wrongdoing or breach of public trust on the part of [government employees]" address a matter of public concern). The question is whether she was speaking "as a citizen." In Garcetti v. Ceballos, 547 U.S. 410 (2006),

the Supreme Court explained that public employees do not "surrender all their First Amendment rights by reason of their employment." Id. at 417; see also Thomas v. Whalen, 51 F.3d 1285, 1291 (6th Cir.1995) (noting that "[f]reedom of speech is not traded for an officer's badge ...) (quotation omitted). However, it made clear that "[w]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti, 547 U.S. at 421.

This means that if Condiff's reports to the Principal and Superintendent regarding the sexual harassment were made "pursuant to [her] official duties" as a teacher in the Hart County School District, then she was not speaking "as a citizen" and her speech is not protected by the First Amendment. Id. Defendant contends that Condiff's First Amendment retaliation claim is barred under Garcetti because Condiff's complaints of sexual harassment of her stepdaughter and another student were not made "as a citizen" but instead as an employee of the school district. According to the Defendant, the Sexual Harassment Policy of the Hart County School District requires all sexual harassment to be reported to appropriate authorities. Specifically, under the General Terms of Employment Handbook, "[a]ny employee who believes that he or she, or any other employee or student is being subjected to harassment or discrimination should bring the matter to the attention of his/her Principal/immediate supervisor or the District's Title IX/Equity Coordinator." (General Terms of Employment, Harassment/Discrimination.) Furthermore, Board Policy 03.162 provides "[e]mployees who believe they have been a victim of an act of harassment/discrimination or who have observed students or other employees being victimized shall, as soon as reasonably practicable, inform their Principal or immediate supervisor who shall provide a form for the employee to

complete and then immediately notify the Superintendent . . . ." (Board Policy 03.162, Guidelines, 1.)  In fact, "[f]ailure by a teacher . . . to report . . . alleged harassment/discrimination as required by this policy . . . shall be cause for disciplinary action."  (Id. at 2.)  Plaintiff does not address the implications of these policies on her First Amendment retaliation claim.

The Supreme Court has "had no occasion to articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate," but it has explained that "the inquiry is a practical one" and that courts should focus on "the duties an employee actually is expected to perform." Garcetti, 547 U.S.  at 424-25; see, e.g., Barachkov v. 41B Dist. Court, 311 Fed. Appx. 863, 871 (6th Cir. 2009).  In interpreting and applying the holding in Garcetti, courts generally have looked to whether the employee had a duty to make the speech in question in determining whether the speech was made in the employee's capacity as a citizen or public employee.  See Freitag v. Ayers, 468 F.3d 528 (9th Cir. 2006)(holding that a prison guard who informed her state Senator and Inspector General about sexual harassment at work was speaking as a citizen, but that her internal reports of inmate sexual harassment and documentation of the prison's failure to respond were not protected by the First Amendment); Harrison v. Oakland County, 612 F. Supp. 2d 848, 867 (E.D. Mich. 2009)(employee was not speaking "as a citizen" when he complained to his superiors about co-worker's sexually inappropriate conduct); Dane v. Board of Sup'rs of Louisiana State University, 2010 WL 3717242 (M.D. La. 2010)(plaintiff's reports of sexual harassment were made in the course of performing his job and pursuant to his official duties); Haynes v. City of Circleville, Ohio, 474 F.3d 357, 364-65 (6th Cir.2007) (finding that a police officer's memorandum was not protected speech where it concerned his official duties and was addressed only to his supervisor); Posey v. Lake Pend Oreille School Dist. No. 84, 546 F.3d

1121, 1127 n. 2 (9th Cir. 2008)("[S]tatements are made in the speaker's capacity as citizen if the speaker 'had no official duty' to make the questioned statements, . . . or if the speech was not the product of 'perform[ing] the tasks [the employee] was paid to perform.'").

In the present case, as an employee of the school district, the Plaintiff had an obligation to report to school officials instances of sexual harassment using the district's sexual harassment policy and procedures. Despite the fact that one of the students was Condiff's stepdaughter, for purposes of her First Amendment retaliation claim, Condiff's report of sexual harassment of students was made pursuant to her official duty as a teacher within the school district and, thus, not in her capacity as a citizen. For these reasons, the Court finds that Condiff's speech to the principal and superintendent are not entitled to First Amendment protection, and therefore, summary judgment is appropriate.

Even if the Court were to decide that Condiff's speech is constitutionally protected, Condiff's claim for First Amendment retaliation fails for the same reasons articulated with respect to her Title IX claim. In the present case, Condiff has not demonstrated that the protected speech was a substantial or motivating factor in the employment actions. As explained above, the record reflects that Condiff's employment was terminated at the end of the 2007-2008 school year along with the employment of every other full-time teacher working under a limited one-year contract in order to provide the School Based Decision Making Council and the Principal of each school the flexibility to retain or replace teachers holding such a one-year contract. Furthermore, at the time Condiff applied for the 2008-2009 language arts position at Bonnieville Elementary School, Condiff was not a "qualified candidate" because she was not eligible for a temporary provisional certification in language arts pursuant to KRS 161.048(7). Finally, the record reflects that Condiff was either

not interviewed or not hired for other teaching positions within the district because the hiring authority at those schools selected other qualified candidate for those positions. Considering the record in the light most favorable to the Plaintiff, the Court finds no reasonable jury could conclude that Condiff's speech was a substantial or motivating factor in the Defendant's employment decisions. Accordingly, the Court concludes that summary judgment on Plaintiff's First Amendment claim is appropriate.

### 2. Equal Protection

Defendant moves for summary judgment on Plaintiff's Equal Protection claim because it is a "class of one" claim by a public employee which the Supreme Court categorically rejected in Engquist v. Or. Dep't of Agric., 553 U.S. 591 (2008). Plaintiff did not respond to this argument. Accordingly, the Court grants summary judgment for Defendant on Plaintiff's Equal Protection claim.

### 3. Official Capacity Claims

Condiff has also brought a § 1983 claim against the Hart County Board of Education and Superintendent Line in his official capacity. A § 1983 claim against a local government official in his or her official capacity is actually a claim against the local government itself. Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir.1994) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 68 (1989)). Therefore, the Court will treat the official capacity claim against Superintendent Line as a claim against the Hart County Board of Education. To determine whether the school board is liable for a § 1983 violation, the Court must analyze two distinct issues: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the [school board] is responsible for that violation." Collins v. City of Harker Heights, Tex., 503 U.S. 115, 120 (1992)

(citation omitted). Condiff's claim against the Hart County Board of Education fails because, as discussed above, Condiff has failed to show an underlying constitutional violation. Unless there is an underlying constitutional deprivation, a municipality cannot be liable.  See Claybrook v. Birchwell, 199 F.3d 350, 361 (6th Cir. 2000); City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986). Accordingly, summary judgment in favor of the Hart County Board of Education is appropriate.

## IV.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Defendants for summary judgment on Plaintiff's claims [DN 21] is **GRANTED**. A Judgment will be entered consistent with this Opinion.

cc: counsel of record